UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

ANDREA DEE HOLLOWAY,  6:14-cv-1657-TC

                Plaintiff,

                ORDER

    v.

Commissioner of Social Security,

                Defendants.

COFFIN, Magistrate Judge:

    Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits and supplemental security income benefits.

    Plaintiff asserts disability beginning December 31, 2006, due to right hip problems, chronic pain, and mental health problems. Tr. 121-22. After a hearing, an administrative law judge (ALJ) determined that plaintiff is not disabled. Plaintiff contends that the ALJ erred in: (1) discrediting psychogenic symptoms and limitations; (2) failing to credit Dr. Kay Dieter's assessment of limitations; (3) rejecting lay witness observations; (4) assessing plaintiff's credibility; (5) failing to include limitations in plaintiff's residual functional capacity assessment; and (6) relying on the

Page 1 - ORDER

vocational expert's testimony.

Plaintiff's Credibility

Plaintiff tends to put the cart before the horse in that she argues that because the ALJ failed to give proper consideration to, for example, plaintiff's treating physician's opinion or her stated impairments, the ALJ failed to properly consider plaintiff's credibility based on the record as a whole. However, plaintiff's subjective complaints play a large role in determining whether treating opinion or alleged impairments have any impact on her ability to work.

The ALJ determined that plaintiff's assertions regarding the intensity, persistence, and limiting effects of her medically determinable impairments are not fully credible. Tr. 29. The ALJ noted improvements with treatment such as use of CPAP and right hip surgery, exhibition of normal hip functioning, and exhibition of difficulty-free walking despite claims of need for an assistive device. Tr. 29-30. The ALJ further noted that cooperative disability investigation agents noted that plaintiff displayed normal stride without an assistive device and ability to bend at the waist with no hesitation. Tr. 31. The ALJ also noted that plaintiff routinely exhibited normal motor functioning, normal sensory functioning, and normal reflexes. Tr. 31.

Morever, the ALJ noted that plaintiff gave inconsistent reports of the etiology of her weight loss claiming diet and exercise on the one hand and depression on the other. Tr. 31. The ALJ also took issue with plaintiff's claim of involuntary clenching of her hands, feet, and neck, as well as seizure-like activity noting that reported details varied considerably with doctors questioning the

veracity of the complaints. Tr. 32-33.[1] In short, the ALJ noted voluntary exaggeration of her alleged incapacitating dystonia, specifically noting that an attending physician during an ER visit observed that when her significant other quickly lifted a sheet to how him her toes, plaintiff moved her toes from a neutral position to a flexed position quickly. Tr. 34. The ALJ further noted during a January 2012 appointment, Dr. Derek Clark concluded that plaintiff had an effort-dependent examination that was inconsistent with known dystonias. Tr. 34. Moreover, the ALJ noted that another doctor observed that plaintiff's flexion in her toes and hands reduced when distracted. Tr. 34.

The ALJ also noted contradictory reports made during an ER visit for an alleged complete paralysis. Tr. 35. The ALJ further noted inconsistent reports from plaintiff regarding her drug abuse of opiates, methamphetamine, and marijuana. Tr. 35-36.

The ALJ also cited plaintiff's daily activities as inconsistent with physical or psychological disability such as visiting casinos despite allegations of social anxiety and agoraphobia, a loss of 70 pounds through diet, and exercise and babysitting a four year old for four to eight hours at a time. Tr. 41. In addition, the ALJ noted a criminal history that includes forgery, identity theft, and fraud. Tr. 42.

The ALJ appropriately relied on lack of medical etiology for neurological dysfunction, inconsistent examination findings, and indications of symptom exaggeration to find plaintiff to lack credibility regarding her claimed limitations. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (ALJ may consider reputation for truthfulness, inconsistencies between testimony and conduct, and daily activities in a finding that a claimant generally lacked credibility and to reject

---

[1] Plaintiff asserts she has a psychogenic disorder causing her alleged incapacitating dystonia, but she has not been formally diagnosed with any such disorder.

Page 3 - ORDER

testimony).

Psychogenic Symptoms and Limitations

Plaintiff asserts that the ALJ erred in finding plaintiff to lack any psychogenic impairment. However, while plaintiff presents speculation from medical sources that her symptoms of dystonia may be psychogenic in nature, the ALJ properly found the symptoms exaggerated. Plaintiff fails to present an actual diagnosis of a medically determinable conversion disorder or psychogenic impairment. See Tr. 46. Such diagnosis is a prerequisite to finding that the impairment exists. See Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (Because none of the medical opinions included a finding of impairment, a diagnosis, or objective test results, plaintiff fails to meet the burden of establishing the impairment). Plaintiff's treating physician thought perhaps there was a conversion disorder versus genetic dystonia, but was not sure (Tr. 1059), and Dr. Derek Clark noted "likely conversion disorder, but cannot rule out unknown genetic dystonia (Tr. 1177, 1181). Because there is no diagnosis of a conversion disorder, the ALJ did not err in failing to include limitations from such a disorder and did not err in failing to undertake the special psychiatric review technique described at 20 C.F.R. § 404.1520a.

Treating Physician's Opinion

Dr. Kay Dieter opined that plaintiff requires breaks incompatible with full-time work, has an inability to maintain concentration required for work activity, and has an inability to maintain necessary attendance. Tr. 1136-39. The ALJ rejected Dr. Dieter's opinion because it was largely based on plaintiff's subjective reports which lack credibility. Tr. 46. Although plaintiff asserts that

Page 4 - ORDER

the long-term care provided by Dr. Dieter necessarily dictates that Dr. Dieter's opinion is based on objective observation, the assessments could only come from an evaluation of plaintiff's self-reports as the office visits simply could not demonstrate actual daily activities, out-of-office exaggerations, etc. The ALJ appropriately rejected the opinion. See Ukolov, 420 F.3d at 1006 (Despite apparent objective observations, the patient's ability to manipulate test results and other's observations of exaggeration permitted rejection of treating source opinion); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (An ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible).

Lay Witness

Plaintiff's boyfriend provided a statement that plaintiff was unable to sit and stand long enough to work and lacked sufficient ability to concentrate. The ALJ gave little weight to the statement stating it was incompatible with the longitudinal record specifically noting exams showing no problems in sitting and standing. Tr. 45. This is a sufficient reason germane to this witness for rejecting the statement. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (Inconsistency with medical evidence is a sufficient reason for rejecting lay statement).

Residual Functional Capacity

Plaintiff argues that the ALJ erred in failing to consider plaintiff's psychogenic impairments in the residual functional capacity assessment. However, as noted above, the ALJ properly discounted such impairments.

<u>Vocational Testimony</u>

Plaintiff argues that hypothetical offered to the vocational expert failed to account for all limitations and, thus, the vocational expert's opinion is of no value. However, the ALJ properly discounted the limitations plaintiff asserts were improperly omitted.[2]

Plaintiff also argues that the vocational expert was not qualified to offer an opinion regarding the number of jobs available or that, at a minimum, plaintiff's counsel should have been afforded an opportunity to cross-examine the expert. However,

> An ALJ may take administrative notice of any reliable job information, including information provided by a VE. <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir.1995). A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.

<u>Bayliss</u>, 427 F.3d at 1218.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is affirmed.

DATED this 5th day of October 2015.

_____
THOMAS M. COFFIN
United States Magistrate Judge

---

[2] Plaintiff also asserts that the ALJ failed to find a lifting limitation of ten pounds, but included such limitation to the vocational expert. At best, plaintiff found a typo in the RFC discussion and does not demonstrate that the ALJ erred in asserting a ten pound limitation.

Page 6 - ORDER